USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/5/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                   :
KENNETH AMRON,                            :
                                Plaintiff,     :
                                                   :     18 Civ. 11336 (LGS)
              -against-                :
                                                   :     **OPINION AND ORDER**
YARDAIN INC. PENSION PLAN, et al.,   :
                                      Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Kenneth Amron brings this action against Defendants Yardain Inc. Pension Plan (the "Plan"), Yardain Inc. (the "Company") and Sandra Adelsberg, alleging breach of contract and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants move to dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

I. **BACKGROUND**

       The following facts are taken from the Complaint, documents appended to or referenced in the Complaint, and are accepted as true only for purposes of this motion. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.") (internal quotation marks omitted) (alteration in original).

       Plaintiff and Defendant Adelsberg were married in 1985. Defendant Adelsberg was the President and Chief Executive Officer of the Company, which was incorporated in 1995. The Company adopted the Plan on or about January 1, 2001. The Plan was later amended and

restated on or about January 1, 2002, and January 1, 2011. The Company was the Plan Administrator, and Plaintiff and Defendant Adelsberg were the sole participants in the Plan.

Defendant Adelsberg filed for divorce from Plaintiff on December 7, 2006, in Bronx County Supreme Court. The Judgment of Divorce, dated March 13, 2009, provided that the Plan at issue "shall be divided equally, fifty (50%) percent each between the parties" and that "[t]he parties shall facilitate such QDROs as required to accomplish the division of" the assets. A QDRO is a Qualified Domestic Relations Order under 29 U.S.C. § 1056(3)(B)(i).[1]

A QDRO was issued on December 23, 2015, by the Bronx County Supreme Court, which "assigns to the Alternate Payee [Plaintiff] an amount equal to FIFTY PERCENT (50%) of the Participant's [Defendant Adelsberg's] vested accrued benefit under the Plan as of December 7, 2006." On the same day the QDRO was issued, the Plan's actuary sent a memo to Plaintiff's counsel providing calculations of the benefits due to Plaintiff under the Plan, both as a direct Participant and as the Alternate Payee sharing in 50% of Defendant Adelsberg's vested benefit pursuant to the QDRO. The memo attached distribution election forms for Plaintiff as a direct Participant and as Alternate Payee for Plaintiff's share of Defendant Adelsberg's benefit. The latter provided for a lump sum distribution of "$263,013 (vested value)" consisting of "50% of benefit determined as of 12/07/2006 as per QDRO agreement." Plaintiff did not return the distribution election forms at that time, nor did he otherwise respond to the benefits determination.

---

[1] QDROs are an "exception . . . from ERISA's alienation and preemption provisions" and are a product of the Retirement Equity Act of 1984 ("REA"), which was designed "to protect the spouse and dependent children in the event of divorce or separation and . . . to give effect to divorce decrees and related state-court orders insofar as they pertained to ERISA-regulated plans." *Yale-New Haven Hosp. v. Nicholls*, 788 F.3d 79, 81 (2d Cir. 2015) (citations and quotation marks omitted).

On December 2, 2016, Thomas Lally, an actuary hired by Plaintiff to review the calculations provided by the Plan, wrote a letter on behalf of Plaintiff "[t]o whom it may concern," asserting:

> The current QDRO calculation incorporates the lump sum present value of these accrued benefits as of December, 2006 to adjust the current benefits that are being proposed. In my opinion, that's 100% wrong. If the participant's accrued benefit has yet to be distributed from the plan, the lump sum value from 10 years ago is irrelevant. The annuity is what is preserved. The lump sum payout option will be based on the mandated IRS 417(e) interest rates and mortality table at the time of distribution.[2]

Based on this opinion, Mr. Lally calculated the present value of Plaintiff's benefits to be approximately $750,000 to $800,000. Plaintiff subsequently retained counsel, who hired another actuary. The second actuary calculated Plaintiff's benefits due at $925,359.86.

On August 15, 2017, Plaintiff's counsel wrote a letter to Defendant Adelsberg, addressed to "Sandra S. Adelsberg, Chief Executive Officer, Veritas Property Management," asserting that the calculation of Plaintiff's benefits under the Plan provided in 2015 "violates the terms of the QDRO, the pension law and generally accepted actuarial practice" because Plaintiff is entitled to 50% of Defendant Adelsberg's vested accrued benefit as of December 2006, the present value of which must "be calculated at the time of Ken Amron's normal retirement date." The letter requests "a corrected calculation of our client's benefits along with revised distribution forms" as well as, among other things, various Plan documents. Defendant Adelsberg's matrimonial counsel responded with a letter on September 14, 2017, declining to provide the documents requested. She also asserted that the funds were "transferred on consent of your client over a year ago," "all transfers required under the parties' QDRO's were correct and consented to by

---

[2] Subsequent hand-written edits by Plaintiff to this letter are disregarded.

Mr. Amron prior to being transferred" and "this matter has been fully litigated for 10 years at the lower court and Appellate Division level."

On October 23, 2017, Plaintiff's counsel wrote another letter to Defendant Adelsberg's matrimonial counsel, referring to Defendant Adelsberg as the "Plan Administrator" and stating an intention to write to the Plan Administrator to "make a formal claim for benefits under the Plan which will be sent simultaneously with this letter." Defendant Adelsberg's counsel responded on November 15, 2017, acknowledging that the benefits from the Yardain Inc. Pension Plan were never distributed due to an "oversight" and because Plaintiff's distribution papers were never returned. "[A]s soon as we get the distribution papers back from Mr. Amron, they will be sent . . . for distribution." In this letter, Defendant Adelsberg's counsel states that certain forms should have been "sent to Ms. Adelsberg as Plan Administrator."

On April 11, 2018, Plaintiff's counsel sent a letter to Defendant Adelsberg directly, addressed to "Sandy Adelsberg, Plan Administrator, Yardain, Inc. Pension Plan," providing modified participant distribution forms "to reflect the correct value of the benefits." The letter also stated that it

> constitutes an appeal of your deemed denial of your client's benefit claim under the plan. If we do not receive payment of our client's full benefit entitlement as set forth on the enclosed distribution forms within 60 days of your receipt of this letter, we will consider our claims appeal for benefits denied and our administrative remedies exhausted.

On May 9, 2018, the Plan's actuary who provided the original calculation of benefits to Plaintiff on December 23, 2015, sent a memorandum to Plaintiff's counsel responding to the April 11, 2018, letter to Defendant Adelsberg. This memorandum is referenced in the Complaint in paragraph 26. In this memorandum, the actuary asserted that

> the accrued benefits used by your actuary . . . are IDENTICAL to the one's [sic] I used. Where the discrepancy lies is in the determination date for the present

4

value. . . . Our original valuation of 526,025 was the value as of December, 2006 NOT the current value. The December, 2006 date was stipulated and ordered to be the determination date by Judge Latisha Martin of the Bronx Supreme Court. The exclusion of subsequent earnings was also part of that stipulation.

Plaintiff subsequently filed this lawsuit.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

## III. DISCUSSION

### A. The Complaint States a Claim that Defendants Violated ERISA § 502(a)(1)(B)

#### 1. Standard of Review

The Complaint makes a claim for benefits "using the correct actuarial methodology as determined by" Plaintiff's actuary. The parties dispute the standard of review under which Plaintiff's benefits calculation should be reviewed. Plaintiff argues that the review is properly de novo, while Defendants argue that the arbitrary and capricious standard applies. The Court

reviews de novo because the question as Plaintiff has framed it is one of statutory interpretation. Because the claim under ERISA § 502(a)(1)(B) is sufficient under a de novo standard of review, it necessarily is sufficient under the more lenient arbitrary and capricious standard, were it to apply.

Plaintiff alleges the calculation in question was wrong as a matter of law, because it violated the statutory methodology for determining the present value of an accrued benefit. "[W]e owe the plan administrators no deference" where "the question before [the court] is simply one of statutory interpretation." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 581 (2d Cir. 2006); *accord Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 727 (S.D.N.Y. 2018). Also, courts have found that a Plan Administrator's interpretation of a QDRO is subject to de novo, rather than deferential review. *See, e.g. Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999) ("The QDRO, unlike the Plan, is a separate, judicially approved contract between Jenkins and Matassarin, which the Plan administrator has no special discretion to interpret."); *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 114 (3d Cir. 1994) ("The district court did not err in holding that it should review *de novo* the plan administrator's construction of the [QDRO], which involved issues of contract interpretation under the [QDRO] and not the Plan.") De novo review is therefore appropriate.

### 2. The Complaint Sufficiently States a Claim that Plaintiff's Benefits Were Miscalculated

The Complaint makes a claim for benefits alleging that Defendants miscalculated the amount owed to Plaintiff by hundreds of thousands of dollars. The parties dispute the date for discounting to present value Plaintiff's one-half share under the QDRO of his former wife's pension benefit. Defendants assert that the amount should be discounted back to December 7, 2006, which is the date Defendant Adelsberg filed for divorce. Plaintiff asserts that the amount

6

should be discounted to the date that benefits commence. Based on the record and arguments before the court, Plaintiff has the better position; absent a Plan provision dictating otherwise, the present value of the assigned benefit should be determined as of the date the lump sum benefit is paid out.

The Complaint alleges that the Plan's "method of calculating Defendant Adelsberg's vested accrued benefit as of the Valuation Date [December 7, 2006] was wrong as a matter of law and violated both the definition of 'accrued benefit' and the statutory methodology for determining the present value of an accrued benefit as set forth under § 411(a)(7) and § 417(e) of the Internal Revenue Code and the Treasury Regulations promulgated thereunder and under the terms of the Plan." Section 411(a)(7) defines the term "accrued benefit" in the case of a defined benefit plan to mean "the employee's accrued benefit . . . expressed in the form of *an annual benefit commencing at normal retirement age*." 26 U.S.C § 411(a)(7) (emphasis added). Subsection (c)(3) provides that, "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [e.g. *a lump sum* paid at an earlier date] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . . ." *Id*. at § 411(c)(3).

> What these provisions mean in less technical language is that: (1) the accrued benefit under a defined benefit plan must be valued in terms of the annuity that it will yield at normal retirement age; and (2) if the benefit is paid at any other time (*e.g.,* on termination rather than retirement) or in any other form (*e.g.,* a lump sum distribution, instead of annuity) it must be worth at least as much as that annuity.

*Esden v Bank of Boston*, 229 F3d 154, 163 (2d Cir 2000). For purposes of determining whether a lump sum payment is worth as much as the annuity, § 417(e)(3) states that "the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate." 26 U.S.C § 417(e)(3)(A) (addressing rules for cash-outs of minimum survivor annuities).

These provisions are applicable here because the Plan is a "defined benefit plan" under ERISA. *See* 29 USC § 1002(35); *Esden*, 229 F3d at 159. The parties agree that the QDRO governs Plaintiff's entitlement to the benefits at issue here. The QDRO "assigns to the [Plaintiff] an amount equal to FIFTY PERCENT (50%) of [Defendant Adelsberg's] vested accrued benefit under the Plan as of December 7, 2006." The QDRO permits this accrued benefit to be paid "in any form available in accordance with the provisions of the Plan" and at any time Plaintiff elects, as allowed by the Plan. Plaintiff alleges that he elected to receive the accrued benefit in the form of a lump sum distribution when he reached age 62, and Defendants do not dispute that such an election is permitted by the Plan. Consequently, under § 411(c)(3), the lump sum distribution that Plaintiff receives -- representing his one-half share of the accrued benefit assigned under the QDRO -- must be equal in worth to the value of that annual benefit commencing at Defendant Adelsberg's normal retirement age. 26 U.S.C. § 411(c)(3) ("[I]f an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit shall be the actuarial equivalent of such benefit . . . .").[3]

For purposes of valuing her benefit as of December 7, 2006, Defendant Adelsberg's benefit was fixed and fully vested in December 2006 under the Plan then in effect.[4] In other

---

[3] Hers is the relevant retirement age, because Plaintiff is entitled to one-half of her accrued benefits under the QDRO which, under the Plan, ordinarily becomes payable as an annuity when she reaches the "normal retirement age." *See* Dkt. 31-3 at 16 ¶ 4a, at 15 ¶ 1b.

[4] Under the 2002 version of the Plan, which was in effect in 2006, the amount of Adelsberg's annual benefit was determined "under a benefit formula equal to 10% of [her] Average Compensation multiplied by [her] applicable Years of Benefit Service to a maximum of 10 such years at the earlier of [her] Termination of Employment or Normal Retirement Date." Dkt. 31-1 at 5, ¶ 3.2. Assuming that Adelsberg's Years of Benefit Service began in 1995 when she created the Company, her annual benefit was 100% of her average annual salary by 2006 when she filed for divorce. *See also id.* at 5 ¶ 3.4 (providing that "the maximum number of Years of Benefit Service credited prior to . . . the date as of which this Plan is established . . . will be 5 (five)"); *id.* at 8 ¶ 4.6 (providing that upon the Participant's termination of employment, the benefit is fully

words, the benefit did not increase in value after 2006. Whether measured in 2006 or 2019, the gross value (i.e., before a present value adjustment) is the same. And the parties do not materially dispute the gross value of Defendant Adelsberg's annual benefit commencing at her normal retirement age, and therefore do not dispute what one-half that value is. In other words, they do not materially dispute the factor by which the *annual* benefit is multiplied to determine the *gross* value of the stream of annual payments that begins at Defendant Adelsberg's normal retirement age and ends at the predicted end of her life pursuant to the relevant mortality table, before any adjustment for present value. Gross value here simply means the product from multiplying the annual payments by the relevant number of years under the mortality table, before any adjustment for present value.

Even though this number -- i.e., the gross value of Defendant Adelsberg's annual benefit -- is not disputed, it is worth noting that the calculation of this gross value is analytically when the valuation date of the benefit is relevant. The QDRO in substance awards Plaintiff a one-half share in Defendant Adelsberg's pension benefit based on its value *at the time she filed for divorce*; Plaintiff does not share in any incremental value accrued after that date. The QDRO thus defines the term "Valuation Date" as "the date on which the Participant's accrued benefit is valued in order to determine the [Plaintiff's] designated portion in accordance with the terms of this Order." The QDRO states that the "[d]ate that [a] Marital Right to a benefit accrued under the Plan ceases" is December 7, 2006, when Defendant Adelsberg filed for divorce.

As noted above, the Plan is a defined benefit plan in which Defendant Adelsberg was fully vested by December 2006, and not a defined contribution plan where the benefit grows as

---

vested after 6 years of service). If Defendant Adelsberg was not fully vested in the Plan in 2006, pursuant to the QDRO Plaintiff would not share in any increase in value due to Defendant Adelsberg's subsequent years of benefit service.

9

additional amounts are contributed each year of employment. Therefore, no reduction, adjustment or "discounting" is necessary to eliminate any increase in the benefit after 2006, because there was no such increase. All that remains is that Defendant Adelsberg's benefit must be discounted to present value as prescribed by ERISA and the Internal Revenue Code. *See generally* 26 U.S.C. § 417(e)(3), 29 U.S.C. § 1055(g)(3) and 26 C.F.R. § 1.417(e)-1(d) *as made applicable by* 26 U.S.C. § 411(a)(11)(B) and 29 U.S.C. § 1053(e)(2).

The parties do not dispute the applicable discount rate, only the applicable date. The purpose of the present value calculation is to provide Plaintiff with a lump sum distribution equal to the present value of a future stream of payments -- here, fifty percent of Defendant Adelsberg's annual annuity payments from her normal retirement age to her expected age of death under the mortality table. The earlier that Plaintiff receives the benefit, the less the dollar amount of the benefit, because Plaintiff enjoys possession of the money and ability to invest it for a longer period than if he had received half of Defendant Adelsberg's annual annuity payment each year beginning at her normal retirement age. That, of course, is what present value calculations are all about. *See generally Esden*, 229 F.3d at 165 (citing *Constantino v. TRW, Inc.*, 13 F.3d 969, 972 (6th Cir. 1994)). Consequently, it appears that Plaintiff is entitled to his share of Defendant Adelsberg's benefit valued -- for purposes of the lump sum present value calculation -- as of the date he receives its lump sum equivalent, and Plaintiff has sufficiently stated a claim that his benefit was miscalculated to the extent that the lump sum present value was "discounted" back to December 2006. This is sufficient to state a claim for miscalculation of benefits.

Defendants argue that the QDRO's directive that Plaintiff receive half of Defendant Adelsberg's vested accrued benefit "as of December 7, 2006," means that the lump sum payment

10

should be discounted back to that date. This construction of the QDRO makes no sense because it means in effect that the amount of the assigned benefit is determined as if Plaintiff had received it in December 2006. As discussed above, the better interpretation of the QDRO is that it awards Plaintiff half of the benefit valued at the time of the divorce and without any increase in value thereafter, but calculated for purposes of a lump sum payment pursuant to § 411(c)(3) to reflect the date of distribution. This is consistent with the Judgement of Divorce which provides that the parties' pension plans "shall be divided equally, fifty (50%) each between the parties" and pertains to property "presently in the name of" the respective parties.

Defendants' cited legal authority is inapposite; most of the cases address the question of valuation date, which is not at issue here, rather than the lump sum present value determination date. *See Lacorazza v. Lacorazza*, 851 N.Y.S.2d 231 (2d Dep't 2008) (ruling on the valuation date of the disputed asset); *Ernst v. Ernst*, 777 N.Y.S.2d 723 (2d Dep't 2004) (same); *McWade v. McWade*, 677 N.Y.S.2d 596 (2d Dep't 1998) (same); *Grecian v. Grecian*, 140 Idaho 601 (Ct. App. 2004) (same); *Blaine v. Blaine*, 275 Neb. 87 (2008) (same); *Kremenitzer v. Kremenitzer*, 81 Conn. App. 135 (2004) (same). Similarly, *Matassarin v. Lynch* is distinguishable and in any event not controlling. There, per the requirements of a QDRO, the plan effectively distributed the plaintiff's benefits at the valuation date by segregating those benefits into a separate, interest-bearing account. *See Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999). Plaintiff has not alleged any such segregation here.

Defendants argue that Plaintiff should be precluded from bringing this claim, because it was decided in the New York Appellate Division six years ago. *See Adelsberg v. Amron*, 960 N.Y.S.2d 98 (1st Dep't 2013). But *Adelsberg v. Amron* rules on the Valuation Date of the retirement assets, which is not in dispute here. *See id*. at 99 ("[T]he valuation date of the

11

retirement assets would be the commencement date of the [divorce] action, and therefore [Defendant Adelsberg] is only required to share in the earnings and/or losses as of that date.") Nowhere does the case address the methodology of calculating a lump sum distribution of pension plan benefits. Moreover, the cited opinion does not provide sufficient information to determine whether it applies to the QDRO at issue in the instant action. *See id*. (discussing the distribution of "retirement assets" generally).

Defendants further argue that Plaintiff failed to exhaust his administrative remedies under the Plan. The Court need not address this argument at the motion to dismiss stage as it is an affirmative defense. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445–46 (2d Cir. 2006) (holding that failure to exhaust administrative remedies under ERISA is an affirmative defense); *S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) ("A court may dismiss a claim on the basis of an affirmative defense raised in the motion to dismiss, only if the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (internal quotation marks omitted); *see also Daly v. New York City*, No. 16 Civ. 6521, 2017 WL 2364360, at *3 (S.D.N.Y. May 30, 2017) (stating in the Prison Litigation Reform Act context that "[b]ecause failure to exhaust is an affirmative defense and may be excused, courts in this Circuit have denied motions to dismiss complaints brought on that basis, even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure"), *report and recommendation adopted sub nom. Daly v. City of New York*, No. 16 Civ. 6521, 2017 WL 2963502 (S.D.N.Y. July 11, 2017).

Finally, Defendants argue that dismissal is appropriate under the doctrines of laches and equitable estoppel. These too are affirmative defenses. *See* FED. R. CIV. P. 8(c)(1). Again, the

allegations in the Complaint are insufficient to dismiss on either of these bases. Laches requires "both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (quotation marks omitted); *accord Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019) ("[M]ere lapse of time, without a showing of prejudice, will not sustain a defense of laches."). Equitable estoppel requires "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Id.*; *accord George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 656 (S.D.N.Y. 2014). At this stage, based solely on the pleadings and related documents, there is no basis to conclude that Defendants suffered prejudice, that Plaintiff lacked reasonable diligence, or that Defendants reasonably relied. Accordingly, the claim survives the motion.

### B. The Complaint's Breach of Contract Claim is Dismissed as Abandoned and Preempted

The Complaint alleges that Defendants breached their contract with Plaintiff by refusing to pay Plaintiff his properly valued benefits. Plaintiff failed to address Defendants' arguments regarding the sufficiency of the breach of contract claim in his opposition to the motion to dismiss, and therefore this claim is deemed abandoned and is appropriately dismissed. *See Baptiste v. Griffin*, No. 18 Civ. 7274, 2019 WL 5635808, at *5 (S.D.N.Y. Oct. 31, 2019) ("When a plaintiff 'fail[s] to address Defendants' arguments in support of dismissing [a] claim, it is deemed withdrawn or dismissed as abandoned.'") (alteration in original) (collecting cases).

Even considered on the merits, Plaintiff's claim for breach of contract is dismissed as preempted by ERISA. "ERISA preemption . . . ensure[s] that all covered benefit plans will be governed by unified federal law, thus simplifying life for employers administering plans in several states, because a patchwork scheme of regulation would introduce considerable

13

inefficiencies in benefit program operation." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (quotation marks and alterations omitted). Whether a claim brought under state law is preempted depends on whether it "relates to" the Plan. *Id*. at 114. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id*. (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) (internal quotation marks omitted)). "As to state common law claims, ERISA preempts those that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Id*. (quotation marks omitted); *accord Gardner v. Verizon Commc'ns Inc.*, No. 16 Civ. 814, 2017 WL 1047331, at *3 (E.D.N.Y. Mar. 17, 2017).

The contract claim alleges that "Defendants breached their contract with Plaintiff by refusing to Plaintiff the properly valued benefits, as set forth herein." As the contract claim is premised on the Plan itself and the denial of benefits that is the basis for Plaintiff's claim under ERISA § 502(a)(1)(B), the contract claim is appropriately dismissed as preempted by ERISA. *See Paneccasio*, 532 F.3d at 114 (affirming dismissal of a breach of contract claim and others where the claims were "premised on the termination of the 1991 Plan and resulting denial of benefits under that Plan; each makes explicit reference to the Plan; and . . . would require reference to the Plan in the calculation of any recovery."); *accord Neurological Surgery, P.C. v. Siemens Corp.*, No. 17 Civ. 3477, 2017 WL 6397737, at *5 (E.D.N.Y. Dec. 12, 2017) ("As the Plaintiff's contractual, quasi-contractual, and unjust enrichment claims all seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA, they are preempted by ERISA.") (internal citations and quotation marks omitted).

### C. The Complaint Fails to Plead a Claim under ERISA § 502(a)(1)(A) for Statutory Penalties pursuant to ERISA § 502(c)

The Complaint alleges that the Plan Administrator failed to respond to Plaintiff's request for Plan documents and is therefore subject under § 502(c) to a penalty of $110 per day. The Complaint fails to plead a sufficient claim, and therefore this claim is dismissed.

The Complaint alleges that the Company has been the Plan Administrator from the adoption of the Plan to the present. This is confirmed by the Plan itself, which designates as the Plan Administrator the "Plan Sponsor," identified as "Yardain, Inc." The Complaint further alleges Plaintiff's counsel sent three letters requesting Plan documents and referencing the request for Plan documents, but the letters were not sent to the Company as Plan Administrator. Instead they were addressed (1) personally to Defendant Adelsberg at Veritas Property Management; (2) to Defendant Adelsberg's divorce attorney; and (3) to "Sandy Adelsberg, Plan Administrator, Yardain Inc., Pension Plan, c/o Veritas Property Management."

Statutory penalties are restricted solely to Plan Administrators. *See* 29 U.S.C. § 1132(c)(1) ("Any *administrator* . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary. . .") (emphasis added); *see also Lee v. Burkhart*, 991 F.2d 1004, 1010 n.5 (2d Cir. 1993) ("Some courts have held that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description. . . . We disagree. Respect for our proper role requires that we decline to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the administrator.") (internal citation and quotation marks omitted). Since, per the Complaint, Defendant Adelsberg is not the Plan Administrator, and Plaintiff did not send his requests to the Plan Administrator, Plaintiff

15

cannot recover statutory damages for Defendant Adelsberg's alleged failure to provide Plan documents.

Plaintiff's assertion in his opposition that he sent the requests to Defendant Adelsberg at her Veritas Property Management address because he knew they would be received at that address is not sufficient to allege that she was statutorily responsible for responding to his requests for documents under ERISA § 502(c). *See Krauss v. Oxford Health Plans, Inc.,* 517 F.3d 614, 631 (2d Cir. 2008) ("We agree with the district court that since [the claims administrator] is not the person specifically so designated by the terms of the instrument under which the plan is operated, it is not a plan administrator . . . . [Plaintiffs] therefore cannot recover statutory damages under that provision of ERISA for [the claim's administrator's] nondisclosure of certain information." (citations and quotation marks omitted)); *accord McFarlane v. First Unum Life Ins. Co.,* 274 F. Supp. 3d 150, 164–65 (S.D.N.Y. 2017) ("Because McFarlane has not plausibly alleged that First Unum is an 'administrator' under ERISA, her claim for statutory penalties fails as a matter of law.") Additionally, the Complaint does not allege how Plaintiff was prejudiced by the delay in provision of the requested documents. *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 848 (2d Cir. 2013) (citation and quotation marks omitted) ("The weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information.") The claim is accordingly dismissed.

### D. The Complaint Fails to Plead a Claim under ERISA § 502(a)(2) or (a)(3)

#### 1. Claim Under ERISA § 502(a)(2)

The Complaint alleges that Defendants Yardain Inc. and Defendant Adelsberg breached their fiduciary duties to Plaintiff under § 502(a)(2) by failing to pay Plaintiff his benefits under

16

the Plan. This claim fails because Plaintiff seeks individual relief rather than relief on behalf of the Plan as a whole.

A "section 502(a)(2) claim fails [if] it was not 'brought in a representative capacity on behalf of the plan.'" *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006) (quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985)); *accord Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 621 F. App'x 70, 72 (2d Cir. 2015) (summary order) ("A claim under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), may not be made for individual relief, but instead is brought in a representative capacity on behalf of the plan." (quotation marks and alterations omitted)). Plaintiff did not bring this claim on behalf of the Plan as a whole. Plaintiff also failed to address Defendants' arguments regarding the sufficiency of this claim in his opposition to the motion to dismiss, and therefore this claim is also deemed abandoned and is appropriately dismissed. *See Baptiste*, 2019 WL 5635808, at *5.

### 2. Claim Under ERISA § 502(a)(3)

In his opposition, Plaintiff raises a new claim under ERISA § 502(a)(3) for breach of fiduciary duty. "[N]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss." *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 322 (S.D.N.Y. 2018); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Even were the Court to construe this argument as a request for leave to amend the complaint to include this new claim, such amendment would be futile because Plaintiff's claim fails under ERISA § 502(a)(3) as well.

A breach of fiduciary duty claim arising under ERISA § 502(a)(3) "authorizes 'appropriate' equitable relief." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). "[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there

17

will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id*. Where "[t]he relief that the plaintiffs seek . . . falls comfortably within the scope of § 502(a)(1)(B) . . . there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (affirming a district court's decision to dismiss plaintiffs' claim under § 502(a)(3) as to the portion of the claim seeking recalculation of their benefits consistent with the terms of the Plan); *accord Jeffrey Farkas, M.D., LLC v. Cigna Health & Life Ins. Co.*, 386 F. Supp. 3d 238, 247 (E.D.N.Y. 2019). Here, Plaintiff seeks solely monetary damages identical to those sought in the claim under ERISA § 502(a)(1)(B), and therefore a claim brought under § 502(a)(3) would fail.

Plaintiff raises new allegations in his opposition that the Plan may not be adequately funded to pay his claim under § 502(a)(1)(B) and therefore the relief he seeks under § 502(a)(3) is necessary and distinct because it holds Defendant Adelsberg personally liable. These allegations are not appropriately before the court,[5] but even assuming they were included in the Complaint, they are insufficient to plead a claim for a breach of fiduciary duty under § 502(a)(3) because Plaintiff seeks money damages, not equitable relief.

> Here, petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity. A claim for money due and owing under a contract is quintessentially an action at law. Almost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. And money damages are, of course, the classic form of *legal* relief.

---

[5] The Court may not "consider[] materials outside the pleadings in ruling on [a] motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 81 (2d Cir. 2000); *accord MacCartney v. O'Dell*, No. 14 Civ. 3925, 2016 WL 815279, at *3 (S.D.N.Y. Feb. 29, 2016) ("[F]actual assertions raised for the first time in a plaintiff's opposition papers, including supporting affidavits and exhibits, are not properly considered by the Court on a motion to dismiss 'as that would constitute improper reliance on matters outside the pleadings." (alterations and quotation marks omitted)).

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citations, quotation marks and alterations omitted) (denying an equitable claim for money damages brought under § 502(a)(3)). "The Supreme Court has delineated what forms of equitable restitution are available under § 502(a)(3), distinguishing permissible forms of equitable restitution such as employment of a constructive trust or of an equitable lien from forms of legal restitution." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (citing *Knudson*, 534 U.S. at 210). "While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Frommert*, 433 F.3d at 270; *see also Krauss, Inc.*, 517 F.3d at 630 (Plaintiffs "cannot recover money damages through their claim for breach of fiduciary duty. In order to state a claim under ERISA section 502(a)(3), the type of relief a plaintiff requests must be equitable.") (alteration and quotation marks omitted)). Any amendment to the Complaint to add a claim for breach of fiduciary duty arising under ERISA § 502(a)(3) would be futile.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Plaintiff's claims under ERISA § 502(a)(1)(A), § 502(a)(2) and for breach of contract, and DENIED as to Plaintiff's claim under ERISA § 502(a)(1)(B).

A case management plan will issue separately.

The Clerk of Court is respectfully directed to close the motion at Docket Number 29.

Dated: December 5, 2019
New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

19